**Cameron O. BAILEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–02–00422–CR.**

Court of Appeals of Texas, El Paso.

Aug. 31, 2004.

Rehearing Overruled Oct. 20, 2004.

Stephen Paul Wohr, Denton, for Appellant.

William T. Hill, Dist. Atty. of Dallas County, Dallas, for State.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

*OPINION*

DAVID WELLINGTON CHEW, Justice.

Cameron Bailey appeals from his convictions under the Texas Securities Act on three separate indictments for: (1) selling unregistered securities; (2) selling securities without being a registered securities salesperson; and (3) engaging in fraud in the sale of securities.[1] A jury found Bailey guilty of all three securities fraud charges.[2] The court sentenced Appellant to 5 years' in jail and a $1,000 fine on two of the charges, and 8 years' in jail and a $5,000 fine on the other. The court also ordered Appellant to pay restitution of more than half a million dollars to seven different investors. We reverse and remand for a new trial.

In late 1998, Appellant began working as a sales person for Cornerstone Financial and sold purported "Certificates of Deposit" (also referred to as "CDs") on behalf of Cambridge International Bank of Grenada. A number of his clients testified they bought the Cambridge CDs after seeing newspaper advertisements offering federally-insured CDs with a 12 percent fixed-rate of return. In February 1999, the Texas Securities Board began investigating Appellant for alleged illegal sales of viatical contracts.[3] An investigator for the State, Joseph Oman, sent Appellant a letter warning him that viaticals are securities, and he was not registered to sell securities in Texas. The State also knew Appellant was also offering the certificates of deposit, but it never sent him a letter or written document telling him that those instruments were considered to be securities.

Appellant complied with the demand by the State Board and stopped selling the viaticals. In September of 1999, the agency executed a search warrant on Appellant's office, where agents seized files and a computer. By June or July of 2000, Cornerstone Financial shut down. In March 2001, eighteen months after seizing Appellant's files, the agency issued a "cease and desist" letter concerning the certificates of deposit of the Cambridge Bank. In February of 2002, the State charged Appellant with knowingly and in-

1. This opinion is one of three essentially identical opinions. Appellant was charged in cause numbers F–0200019–T, F–0200037–T, and F–0200035–T of the offense of selling unregistered securities under the Texas Securities Act.

2. As the record suggests and Bailey's counsel confirmed during oral argument, the three indictments here were among thirty-four indictments against Bailey. The other indictments were made under the Penal Code and have been adjudicated.

3. A viatical contract or settlement is defined as an agreement that is solicited, negotiated, offered, entered into, delivered, or issued for delivery in this state under which a person pays anything of value that is: (A) less than the expected death benefit of a policy insuring the life of an individual who has a catastrophic or life-threatening illness or condition; and (B) paid in return for the policy owner's or certificate holder's assignment, transfer, bequest, devise, or sale of the death benefit under or ownership of the policy. Tex.Ins. Code Ann. 1111.001(3) (Vernon Supp.2003).

tentionally offering for sale unregistered securities in the form of certificates of deposit. Appellant was never charged in relation to sales of the viaticals.

Appellant's single issue on appeal is that "the trial Court erred in finding as a matter of law that a certificate of deposit is a security within the meaning of the [Texas] Securities Act." Appellant argues that certificates of deposit are not securities as a matter of law. The State argues the opposite; that they are securities as a matter of law. We conclude that whether a nominal certificate of deposit is or is not a security under the Texas Security Act depends on the facts and the determination of that issue must be left to a jury under instructions defining "securities" under the Texas Security Act[4] and Certificate of deposits under the Texas Business and Commerce Code.[5] *See Gamez v. State*, 737 S.W.2d 315, 322 (Tex.Crim.App.1987). Accordingly, we re-frame Appellant's complaint to be that the trial court erred in charging the jury that the certificates of deposit in this case were securities. *See* Tex.R.App.P. §§ 38.1, 38.9.

### Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim.App.1994). We first determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32. Preserved error in the charge requires reversal if the error caused some harm to the accused from the error. Tex.Code Crim.Proc.Ann. art. 36.19 (Vernon 1981); *see also Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)(Opin. on reh'g).

The essential issue in this case is whether the certificates of deposit that Appellant sold were securities under Texas securities law. The State presented two key expert witnesses to establish that they were. First, William Kerr, a federal banking examiner with the Officer of the Comptroller of Currency, testified that the Cambridge International Bank was an offshore bank that was not approved to do banking in the United States and that there was no deposit insurance or other security to protect that bank's deposits. This testimony laid the predicate for the testimony of David Grauer, director of the Enforcement Division of the Texas Securities Board. Mr. Grauer gave his opinion that the instruments sold by Appellant were securities because they were "investment contracts" and "evidence of indebtedness." He also testified more boldly, on cross-examination, that in his opinion all certificates of deposit were securities except that FDIC insured deposits were "exempt securities."

The trial court obviously believed that the issue was his to decide as a question of law because most of Mr. Grauer's testimony, and certainly all that was essential to the issue, was presented outside the presence of the jury. At the conclusion of the State's case, the trial court denied the defendant's Motion for Directed Verdict ruling that the certificates of deposits were securities. Then, after both sides closed, the trial court instructed the jury that "the certificates of deposit issued by Cambridge International Bank & Trust. Ltd., are securities."

We begin with the common, ordinary everyday meaning of a nominal certificate of deposit as a financial instrument. The

---

**4.** Tex.Civ.Stat.Ann. art. 581-4 (Vernon Supp 2004–05).

**5.** Tex.Bus. & Com.Code Ann. 3.104(j)(Vernon 2002).

Texas Business and Commerce Code provides us this definition:

> 'Certificate of deposit' means an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank.

Tex.Bus. & Com.Code Ann. 3.104(j).

In banking, a certificate of deposit and savings accounts are classified as a time deposits, as opposed to checking accounts which are classified as demand deposits, with a bank or thrift institution. A certificate of deposit is purchased from a bank for a fixed sum of money for a fixed period of time and, in exchange, when the certificate of deposit matures, the issuing bank pays the original money plus the accrued interest. The United States and most advanced industrial countries include the total amount of bank deposits in short-term savings accounts and certificates of deposit in the money stock or money supply of the country. Securities are not included in the money supply. Campbell R. McConnell & Stanley L. Brue, Macroeconomics, p. 256 (13th ed.1990).

The Texas State Securities Act defines securities as:

> The term 'security' or 'securities' shall include any limited partner interest in a limited partnership, share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or *other evidence of indebtedness,* any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not. The term applies regardless of whether the 'security' or 'securities' are evidenced by a written instrument. Provided, however, that this definition shall not apply to any insurance policy, endowment policy, annuity contract, optional annuity contract, or any contract or agreement in relation to and in consequence of any such policy or contract, issued by an insurance company subject to the supervision or control of the Texas Department of Insurance when the form of such policy or contract has been duly filed with the Department as now or hereafter required by law. [Emphasis added].

Tex.Civ.Stat.Ann. art. 581–4(A)(Vernon Supp.2004–05).

Obviously, the Texas statutory definition does not contain the term certificate of deposit. Despite this omission, the State seeks to persuade us that three Federal civil cases provide a test that support the trial court's finding that these nominal certificates of deposit are securities. *See Securities and Exchange Commission v. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Marine Bank v. Weaver,* 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982); *Reves v. Ernst & Young,* 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990).

In *Howey,* the Supreme Court found that a land sales and service investment contract was a security when it was, "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...." *Howey,* 328 U.S. at 298–

99, 66 S.Ct. at 1103. This case provides what is called the *Howey* or the "investment contract" test. This test may well have application but its application is dependent not upon a legal construction but rather the facts of a given case.

In *Marine Bank,* the Supreme Court held that a certificate of deposit issued by an American bank was not a security within the meaning of the Securities Exchange Act, because. Congress did not intend the securities act to provide a broad remedy for all frauds. *Marine Bank,* 455 U.S. at 556, 559, 102 S.Ct. at 1223–24, 1225. The *Marine Bank* Court based its conclusion on the fact that federal banking regulations were broad enough and deposit insurance was sufficient to protect purchasers of certificates of deposit at least up to $100,000. *Id.* at 552–53 n. 1, 102 S.Ct. at 1222 n. 1. The State contends that the Courts dicta that "[i]t is unnecessary to subject issuers of bank certificates of deposit to liability under the antifraud provisions of the federal securities laws since the holders of bank certificates of deposit are abundantly protected under the federal banking laws" supports a conclusion that a bank certificate of deposit that is not protected under banking laws must be a security. *Marine Bank,* 455 U.S. at 559, 102 S.Ct. at 1225.

There is a logical fallacy in that conclusion; it assumes the very thing it seeks to prove. In fact, the Court noted in *Marine Bank,* 455 U.S. at 551, 102 S.Ct. at 1220, in that case that the Securities and Exchange Commission joined by the Federal Deposit Insurance Corporation, the Border of Governors of the Federal Reserve System and the Office of the Comptroller of the Currency filed an *amicus curie* that argued that the certificate of deposit in that case was not a security.

In *Reves,* the Court found that by applying a "family resemblance" test, uncollateralized and uninsured promissory. notes with a constantly revised interest rate payable on demand were securities, even though they bear little resemblance to one of the enumerated categories of instruments that are securities. *Reves,* 494 U.S. at 67, 110 S.Ct. at 952. Just like the *Howey* test, such a test could have application but again all determinations depend more on fact than legal construction.

Finally, the State points to civil cases in which courts have said, "in searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967), *citing Howey,* 328 U.S. at 298, 66 S.Ct. at 1102. We find a stark contrast, however, in a leading Texas criminal case, *Bruner v. State,* 463 S.W.2d 205 (Tex.Crim.App.1970) where the Court held that because of the highly penal nature of the Securities Act, any doubt as to whether an offense has been committed should be resolved in favor of the accused. *Bruner,* 463 S.W.2d at 215.

Moreover, we find *Tcherepnin* distinguishable not only because of its civil nature, but also because of the types of instruments sold. In *Tcherepnin,* purchasers received dividends based on the association's profits, not a fixed rate of interest, as in the present case. *Tcherepnin,* 389 U.S. at 337, 88 S.Ct. at 553–54.

In *Bruner,* clients were encouraged to invest money into a cleaning products marketing company that would guarantee dividend and profit payments. *Id.* at 207. In addition, investors would receive a portion of profits from sales made to guests whom investors would bring to dinner parties given by the company. *Id.* A state securities regulator testified that it was his opinion that the investment contracts offered by the company were, in fact, securities. *Id.* at 210. There, as here, the court was

unconvinced. The *Bruner* Court said the State's logic was flawed because the profits did not rely solely on the efforts of others, as required by the *Howey* test. *Id.* at 214.

We do not say that something called a certificate of deposit is not a security. We simply say that whether a certificate of deposit or some other labeled instrument is a security can not be determined in the abstract but must be determined after a careful consideration of the context. It is, in other words, a fact question that should have been put to the jury with appropriate instructions. But because the jury did not hear the key witness who provided the necessary context, substance, and reality surrounding the sale, even if they had been properly instructed, they would not have had sufficient facts to make such a determination. We must therefore sustain the sole issue presented and remand the case for a new trial.