

**NUMBERS
13-14-00653-CR
13-14-00654-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**WILLIAM C. MAYS,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                 **Appellee.**

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Garza**

A jury convicted appellant, William C. Mays, of theft in the amount of $100,000 or more but less than $200,000, a second-degree felony,[1] *see* TEX. PENAL CODE ANN. §

---

[1] The theft conviction is appellate cause number 13-14-653-CR and trial court cause number 13-CR-3264-F.  We note that section 31.03 of the penal code has been amended.  However, the amendments

31.03(a), (b)(1), (e)(6) (West, Westlaw through 2015 R.S.), and securities fraud in the amount of $100,000 or more, a first-degree felony.[2]  *See* TEX. REV. CIV. STAT. ANN. art. 581-29(C)(4)(c) (West, Westlaw through 2015 R.S.).  The jury assessed punishment at ten years' imprisonment on the theft charge and twenty years' imprisonment on the securities fraud charge.  The trial court ordered the sentences to be served concurrently.

By nine issues, appellant contends:  (1) he was denied his constitutional protection against double jeopardy; (2) the trial court abused its discretion in denying his challenge for cause to a juror; (3) his Fifth Amendment right was violated by the admission of testimony that he failed to appear in an administrative proceeding; (4) the trial court erred in admitting extraneous-offense evidence; (5) the trial court erred in admitting the testimony of an expert witness for the State; (6) the trial court erred in denying his motion for instructed verdict regarding one of the victims on grounds that there was insufficient proof of venue; (7) the trial court abused its discretion in denying his request for language in the jury charge relating to witness bias; (8) his constitutional right against incarceration for debt was violated; and (9) the evidence was insufficient to establish the requisite criminal intent to commit securities fraud and theft.  We affirm the judgments in each case.

## I.    BACKGROUND[3]

Appellant was Vice President of Investments for Frost National Bank ("Frost") in Corpus Christi, Texas from around 2000 to 2004.  While at Frost, he advised customers about investments.  In late 2004, he formed his own company, Mays Financial Group,

---

do not affect this case, and we cite to the current version of the statute.

[2] The securities fraud conviction is appellate cause number 13-14-654-CR and trial court cause number 13-CR-3265-F.

[3] The background facts were taken from the witnesses' trial testimony and the evidence admitted at trial.

and worked in association with several investment advisory firms. Some of appellant's clients at Frost transferred their investment accounts to investments offered by appellant through the investment advisory firms.

In 2009, appellant signed a promissory note for a commercial loan in the amount of $11,385.87 from Accion, Texas, Inc. ("Accion, Texas"); the loan was secured by a blanket lien on all of Mays Financial Group's assets, including furniture, office equipment, and accounts receivable. In January 2011, a Travis County court entered a judgment against appellant in the amount of $20,289 for an unpaid residential lease. In March 2011, appellant was divorced and ordered to pay $1,100 per month in child support. In April 2011, the IRS issued a notice of federal tax lien against appellant and his ex-wife in the amount of $42,924.56. Around October 2011, appellant ended his association with other investment advisory firms. As of November 2011, he was no longer licensed as an investment advisor. In January 2012, appellant was sued in Nueces County by American Express for credit card debt in the amount of $34,119.45.

Between March 2011 and October 2012, appellant solicited several clients and former clients to invest funds in his investment firm. Each investor received an "Agreement," which detailed the duration of the investment period and rate of return in the form of a fixed monthly dividend. Evidence at trial established that appellant did not invest most of the funds, but instead used them to pay personal expenses, debts, and other obligations, including payments to earlier investors.

Appellant was charged with theft from four victims, Diane Lechuga, Judson Hall, Kathleen Trial, and Susan Morris.[4] Appellant was also charged with securities fraud by

---

[4] Prior to trial, the State moved to strike two other victims named in the indictment, Marianne Sevier and Jerry Sevier, and the trial court granted the motion.

3

failing to disclose to the victims numerous material facts, including that the invested funds would be used for Mays's personal expenses, that Mays Financial Group's assets were pledged to Accion, and that Mays had various debts and obligations, including the Travis County judgment and the IRS tax lien.

The victims named in the indictments testified at trial. The State presented testimony by Eliza Lujan, a financial examiner with the Texas State Securities Board, and Travis Iles, a securities regulatory expert. Appellant also testified. As noted, the jury found appellant guilty of both offenses and assessed punishment at ten years' imprisonment and a $10,000 fine for the theft offense and twenty years' imprisonment and a $10,000 fine for the securities fraud offense. The trial court also ordered restitution to the victims in each case. This appeal followed.

## II. DOUBLE JEOPARDY

By his first issue, appellant contends that he was charged with theft and fraud for the same criminal conduct, which constitutes double jeopardy. The State responds that: (1) appellant forfeited his right to raise a double jeopardy claim because he did not raise such a claim at trial, and no double jeopardy violation is clearly apparent from the face of the record; and (2) even if appellant had preserved his claim, no double jeopardy violation occurred because securities fraud and theft contain different elements.

The Double Jeopardy Clause, contained within the Fifth Amendment to the United States Constitution and applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense. U.S. CONST. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); *id.* amend. XIV; *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim.

4

App. 2008) (citing *Brown v. Ohio*, 432 U.S. 161, 164 (1977)). Two offenses are not considered the "same" if "each provision requires proof of a fact which the other does not." *Littrell*, 271 S.W.3d at 276 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.")). However, we "focus on the elements alleged in the charging instrument—not on the offense as defined in the Penal Code." *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014); *Ex parte Denton*, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013). "Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against offenses that have different statutory elements, if the same facts required to convict are alleged in the indictment." *Garfias*, 424 S.W.3d at 58–59.

Here, appellant alleged a "multiple-punishment" type of double jeopardy claim, in which he alleged that his criminal conduct (taking money from clients) was being punished twice under two distinct statutes when the legislature intended the conduct to be punished only once. *See Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). The *Blockburger* "same elements" test is used to determine if two convictions constitute "multiple punishment" under the double jeopardy clause. *Id.* "[A] potential multiple-punishment double-jeopardy claim may be forfeited if a defendant does not properly preserve that claim." *Id.* at 686. However, a double-jeopardy claim may be raised for the first time on appeal if: (1) "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record' and (2) "when enforcement of the usual rules

5

of procedural default serves no legitimate state interest." *Id.* at 687 (quoting *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)). "[W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory." *Id.* at 687.

Appellant did not raise any double jeopardy challenges before the trial court. His double jeopardy claim is therefore forfeited unless the undisputed facts show that a double jeopardy violation is clearly apparent from the face of the record. *See id.* The jury was instructed to find appellant guilty of theft if it found that he: (1) unlawfully appropriated (2) money (3) from four specific owners in four specific amounts, (4) and the appropriations were without the effective consent of the owners in that their consent was induced by deception. *See* TEX. PENAL CODE ANN. § 31.03(a), (b)(1). As to securities fraud, the jury was instructed to find appellant guilty if it found that he: (1) sold or offered for sale (2) securities (notes and Agreements) (3) to the four specified persons in the specified amounts, and (4) committed fraud in connection with the sales by intentionally failing to disclose, in the disjunctive, various information, including (a) that invested funds would be used for purposes other than those intended, (b) that funds would be used for appellant's personal expenses, (c) that the assets of Mays Financial Group were pledged to Accion, Texas, (d) that a federal tax lien against Mays had been filed, or (e) that a $20,289.59 judgment had been rendered against Mays. *See* TEX. REV. CIV. STAT. ANN. art. 581-29(C)(4)(c). The State's theory of securities fraud focused on appellant's offering securities for sale to his victims without disclosing various material facts. In other words,

6

the jury could have found appellant guilty of securities fraud even if his victims had declined to purchase securities. Thus, securities fraud by failure to disclose would not constitute a double jeopardy violation with theft, which required the jury to find that appellant unlawfully appropriated money from the victims—actually sold securities—by deceiving them. And, as discussed more fully below, there was sufficient evidence to support the State's failure-to-disclose theory as to all of the material facts listed disjunctively in the jury charge. *See id.* We conclude, therefore, that a double jeopardy violation was not clearly apparent from the face of the record and that appellant forfeited his double jeopardy claim. We overrule appellant's first issue.

### III.   CHALLENGE TO JUROR

By his second issue, appellant contends the trial court abused its discretion by denying his challenge for cause to a specific juror. Appellant contends he requested that Juror No. 36 be struck for cause because Juror No. 36 indicated he could not presume the accused to be innocent. The State responds that: (1) the trial court properly rehabilitated the juror and no error occurred; and (2) even if the trial court erred, no issue was preserved because appellant failed to exhaust all his peremptory strikes, request additional peremptory strikes, or notify the court that a specific objectionable juror remained on the venire. We agree with the State that appellant did not preserve this issue.

We review a trial court's ruling on a challenge for cause for abuse of discretion. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011); *Urista v. Bed, Bath, & Beyond, Inc.*, 245 S.W.3d 591, 596 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Cortez v. HCCI–San Antonio, Inc.*, 159 S.W.3d 87, 93 (Tex. 2005)). To "preserve error

7

when a challenge for cause is denied, a party must use a peremptory challenge against the veniremember involved, exhaust its remaining challenges, and notify the trial court that a specific objectionable veniremember will remain on the jury list." *Urista*, 245 S.W.3d at 596 (quoting *Cortez*, 159 S.W.3d at 90–91).

Here, appellant objected to a group of venire members, including Juror No. 36, on the issue of presumption of innocence. The trial court assembled the group and discussed the issue with them. Following the discussion, Juror No. 36 assured the trial court and appellant's counsel that he could presume appellant's innocence until the State proved guilt beyond a reasonable doubt. At the end of the discussion, appellant's counsel renewed his objection to the group, and the trial court denied the objection. After the trial court announced the jurors, it asked the State and appellant's counsel if there were any objections to the jurors chosen; both parties responded, "no." Appellant's counsel did not use a peremptory challenge against Juror No. 36, did not exhaust his remaining challenges, and did not notify the trial court that Juror No. 36 was objectionable and remained on the venire. *See id.* Accordingly, appellant failed to preserve any issue for review. *See id.; Cortez*, 159 S.W.3d at 90–91. We overrule appellant's second issue.

### IV. COMMENT ON FIFTH AMENDMENT PRIVILEGE

By his third issue, appellant contends that his Fifth Amendment right against compelled self-incrimination was violated when the State's investigator commented on appellant's failure to respond to a subpoena to appear in an administrative proceeding. According to appellant, the State investigator's testimony that appellant did not appear for the administrative hearing was "an impermissible comment on [appellant's] right to silence." The State responds that: (1) appellant did not invoke his Fifth Amendment

8

privilege; (2) the Fifth Amendment privilege does not apply to a pre-arrest, pre-*Miranda*[5] administrative subpoena; (3) any potential error caused by the comment was cured by the trial court's instruction to disregard the comment; and (4) alternatively, the comment was harmless.

Rani Sabban, an investigator and financial examiner with the Enforcement Division of the Texas State Securities Board, testified that he conducted an investigation of Mays Financial Group. Sabban testified that, as of November 2, 2011, appellant was no longer licensed as an investment advisor. The State Securities Board issued a subpoena requesting that appellant provide testimony regarding Mays Financial Group and documents related to the company. Sabban testified that appellant did not appear in response to the subpoena, but that he did eventually come in for an interview in July of 2013. Appellant's counsel objected to Sabban's statement that appellant did not appear in response to the subpoena on grounds that it was a violation of appellant's Fifth Amendment rights. After a brief discussion outside the presence of the jury, the trial court instructed the jury to "disregard any testimony offered by the witness either in response to a question of what was stated in a question, that the defendant did not appear at the office of this officer in response to the subpoena." Appellant's counsel requested a mistrial, which the trial court denied.

According to Sabban's testimony, appellant's failure to appear in response to the subpoena occurred before appellant was interviewed in July 2013 and well before he was indicted in September 2013. We agree with the State that in *Salinas v. State*, the court of criminal appeals held that "pre-arrest, pre-*Miranda* silence is not protected by the Fifth

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

9

Amendment right against compelled self-incrimination, and that prosecutors may comment on such silence regardless of whether a defendant testifies." 369 S.W.3d 176, 179 (Tex. Crim. App. 2012); *see also Larios v. State*, No. 13-15-00022-CR, 2015 WL 9487107, at *4 (Tex. App.—Corpus Christi Dec. 29, 2015, no pet.) (mem. op., not designated for publication) (noting that pre-arrest, pre-*Miranda* silence is admissible); *Shephard v. State*, No. 01-12-01180-CR, 2014 WL 768309, at *9 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, no pet.) (mem. op., not designated for publication) (noting that pre-arrest, pre-*Miranda* silence not protected by Fifth Amendment right against compelled self-incrimination). Because Sabban's testimony concerned appellant's pre-arrest, pre-*Miranda* silence, it did not violate the Fifth Amendment. *See Salinas*, 369 S.W.3d at 179. Moreover, the trial court instructed the jury to disregard that portion of Sabban's testimony. An instruction to disregard is presumed to cure all but the most blatant comments. *Moore v. State*, 999 S.W.2d 385, 405–06 (Tex. Crim. App. 1999). We conclude that Sabban's testimony was not improper, and the trial court did not err in denying appellant's request for a mistrial. We overrule appellant's third issue.

## V. EXTRANEOUS OFFENSE EVIDENCE

By his fourth issue, appellant contends the trial court erred in admitting financial records of Jerry and Marianne Sevier, parties who were struck from the indictment before trial. Evidence showed that the Seviers were investors in Mays Financial Group. Appellant contends that the State was improperly permitted "to present evidence of bad acts to the jury to show conformity to the conclusion that [appellant] was acting in a 'ponzi scheme.'"[6]

---

[6] A "Ponzi scheme" is an investment fraud wherein investors are paid from monies obtained from later investors rather than from profits of the underlying business venture. *Goldstein v. Mortenson*, 113

Appellant provides two citations to the record: the first, to the portion of the record in which the State requested that the Seviers be struck from the indictment; the second, to a portion of the record during voir dire that is unrelated to the issue. By failing to provide an accurate citation to the record, appellant has waived any issue. *See* TEX. R. APP. P. 38.1(i); *Upton by and Through Upton v. Baylor College of Medicine*, 811 S.W.2d 168, 174 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (holding issue waived where citation to record did not reflect the ruling complained of). We overrule appellant's fourth issue.

## VI.    STATE'S EXPERT WITNESS

By his fifth issue, appellant contends the trial court erred in allowing testimony from the State's expert witness, Iles, a securities regulatory expert in the Austin, Texas office of the Texas State Securities Board. Appellant complains that Iles's opinions "were conclusory, implied legal conclusions, and were cumulative." Specifically, appellant complains of Iles's testimony regarding the definition of "security" and whether the instruments at issue here were securities; he also complains of Iles's testimony as to whether certain facts in evidence were "material." The State responds that: (1) Iles gave opinions on issues that were mixed questions of law and fact, which were appropriate for expert testimony; (2) Iles's opinions aided the jury in understanding the case; and (3) Iles was qualified to testify as an expert witness in securities regulation.

We review a trial court's ruling regarding the admissibility of expert testimony for an abuse of discretion. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010); *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997) (en banc). A trial court abuses its discretion only when its ruling is "so clearly wrong as to lie outside that zone

S.W.3d 769, 773 n.1 (Tex. App.—Austin 2003, no pet.).

11

within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992); *see Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

An expert may testify on mixed questions of law and fact. *In re Christus Spohn Hosp. v. Kleberg*, 222 S.W.3d 434, 440 (Tex. 2007); *Anderson v. State*, 193 S.W.3d 34, 38 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Blumenstetter v. State*, 135 S.W.3d 234, 248 (Tex. App.—Texarkana 2004, no pet.); *see Matamoros v. State*, No. 13-13-00692-CR, 2015 WL 6759331, at *8 (Tex. App.—Corpus Christi Nov. 5, 2015, pet. ref'd) (mem. op., not designated for publication) (noting that expert may testify on mixed question of law and fact). Whether an investment qualifies as a security has been recognized as a mixed question of law and fact. *See Bailey v. State*, 155 S.W.3d 346, 351 (Tex. App.—El Paso 2004), *rev'd on other grounds*, 201 S.W.3d 739 (Tex. Crim. App. 2006); *see also Digges v. State*, No. 05-10-00239-CR, 2012 WL 2444543, at *7 (Tex. App.—Dallas, June 28, 2012, pet. ref'd) (not designated for publication); *Tex. State Sec. Bd. v. Miller*, No. 03-06-00365-CV, 2009 WL 1896075, at *3 (Tex. App.—Austin, July 1, 2009, no pet.) (mem. op.). Similarly, the issue of materiality is a mixed question of law and fact. *Bridwell v. State*, 804 S.W.2d 900, 904 n.7 (Tex. Crim. App. 1991).

Appellant complains that the trial court erred in permitting Iles to testify regarding whether the instruments appellant sold to clients were "securities" and regarding whether certain facts were "material." In his discussion of this issue, appellant provides only one citation to the record: the entire portion of the record covering Iles's testimony, which consists of over a hundred pages. Appellant has inadequately briefed his issue. *See* TEX. R. APP. P. 38.1(i); *Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995)

12

("As an appellate court, it is not our task to pore through hundreds of pages of record in an attempt to verify an appellant's claims."); *see also Salazar v. State*, No. 13-14-00006-CR, 2015 WL 4380962, at *2 (Tex. App.—Corpus Christi July 16, 2015, pet. ref'd) (mem. op., not designated for publication).

Even if appellant had adequately briefed the issue, we find his arguments to be without merit. Because the issues of whether the instruments sold by appellant were securities and whether certain facts were material were both mixed questions of law and fact, the trial court did not abuse its discretion in permitting Iles's testimony. *See Anderson*, 193 S.W.3d at 38; *Bailey*, 155 S.W.3d at 351; *Bridwell*, 804 S.W.2d at 904 n.7. With respect to appellant's complaints that Iles's opinions were "conclusory, implied legal conclusions, and were cumulative," appellant failed to provide a clear and concise argument with citations to the record in support of his argument, and thereby failed to preserve this complaint. *See* TEX. R. APP. P. 38.1(i). We overrule appellant's fifth issue.

## VII. VENUE AS TO ONE OF VICTIMS

By his sixth issue, appellant contends that the trial court erred in denying an instructed verdict as to one of the victims, Susan Morris, because there was insufficient proof of venue in Nueces County. At the close of the State's case, appellant requested a directed verdict as to Morris because the criminal conduct as to Morris occurred in San Patricio County, not in Nueces County. The State argued—as it does on appeal—that when multiple offenses that have occurred in more than one county have been aggregated together under a single offense, proper venue may be established in any county where any one of the individual offenses occurred.

"When reviewing whether there is legally sufficient evidence of venue, 'we view all the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found venue was proper by a preponderance of the evidence.'" *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, pet. ref'd) (quoting *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

Section 31.09 of the penal code provides that "[w]hen amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense." TEX. PENAL CODE ANN. § 31.09 (West, Westlaw through 2015 R.S.). The court of criminal appeals has held that when theft is aggregated into a single offense under section 31.09, the proper county for prosecution is any county in which any of the aggregated conduct occurred, or any element of the conduct. *See State v. Weaver*, 982 S.W.2d 892, 893 (Tex. Crim. App. 1998); *Riley v. State*, 312 S.W.3d 673, 678 (Tex. App.—Houston [1st Dist. 2009, pet. ref'd).[7]

---

[7] Here, although the indictment and judgment in 13-14-653-CR both reference penal code "31.03" (providing for theft as a single offense), it is clear from the indictment and the record that the State charged appellant with thefts aggregated into one offense pursuant to "one scheme and continuing course of conduct." *See* TEX. PENAL CODE ANN. § 31.09 (West, Westlaw through 2015 R.S.). Similarly, in cause number 13-14-654-CR, the indictment alleged that the amounts obtained pursuant to securities fraud "were obtained pursuant to one scheme and continuing course of conduct" in the aggregate amount of $100,000 or more. *See* TEX. REV. CIV. STAT. ANN. art. 581-29-2 (West, Westlaw through 2015 R.S.) ("When amounts are obtained in violation of [the Texas Securities Act] under one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.").

14

Here, appellant argues that the State failed to prove that any element of the offense as to Morris occurred in Nueces County. We find that *Weaver* governs this issue and appellant's issue is without merit. *See Weaver*, 982 S.W.2d at 893. The record established that at least three transactions involved in the aggregated theft and securities fraud charges occurred in Nueces County, and Nueces County was therefore a proper venue. *See id.* We overrule appellant's sixth issue.

## VIII.  JURY CHARGE

By his seventh issue, appellant contends the trial court abused its discretion in denying his request for an instruction on witness bias. Appellant argues that Iles, the State's expert witness, was biased because he was employed by the Texas State Securities Board, the entity prosecuting appellant. The State responds that the trial court did not err in denying the requested instruction because it would have constituted a comment on the credibility of the State's witness, and alternatively, any such error was harmless.

In reviewing the denial of a requested jury instruction, we determine first if the denial was error. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Jester v. State*, 64 S.W.3d 553, 556 (Tex. App.—Texarkana 2001, no pet.). If we find error, we then perform a harmless error review. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

The appellant requested an instruction which included the following:

You are the sole judges of the credibility or "believability" of each witness and the weight to be given the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses including the defendant who testified in this case. You should decide whether you believe all or any part of what each person had to say, and how important that testimony was. In making that decision I suggest that

15

you ask yourself a few questions:  Did the person impress you as honest?  Did the witness have any particular reason not to tell the truth?  *Did the witness have a personal interest in the outcome of the case?  Did the witness have any relationship with either the government or the defense?*  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  These are a few of the considerations that will help you determine the accuracy of what each witness said.

(emphasis added).

The requested instruction appears designed to suggest that jurors should question the credibility of any witness with a relationship to the State or to the defense.  Appellant's counsel had already attempted to impeach Iles's credibility by raising the issue of bias.  During his cross-examination of Iles, appellant's counsel specifically accused Iles of bias, asking him, "[w]ould you agree with me or is it fair to say that you are a biased witness?"  Appellant's counsel also elicited testimony from Iles that he and one of the three prosecutors in the case worked in the same office of the State Securities Board and that he was the prosecutor's supervisor.  Similarly, during closing argument, appellant's counsel argued to the jury that the prosecutors' "boss" (Iles) was "biased."

The charge that was given to the jury contained the following:

No statement, ruling or remark which I may have made during the presentation of testimony was intended to indicate my opinion as to what the facts are.  You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but the law you shall receive in these written instructions and you must be governed thereby.  In determining the credibility of the witnesses, you alone must decide upon the believability of the evidence and its weight and value.

The jurors were therefore properly instructed that they were to judge the credibility of the witnesses and the "believability" of the evidence.  Appellant's requested instruction was duplicative of the instruction given and was therefore unnecessary.  Moreover, by

16

emphasizing the relationship of the State's expert witness to the prosecutors, the requested instruction would have constituted an impermissible comment on Iles's credibility. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West, Westlaw through 2015 R.S.) ("[T]he judge shall . . . deliver to the jury . . . a written charge . . . not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury . . . ."). We find that the trial court did not err in denying appellant's requested instruction. *See Arline*, 721 S.W.2d at 351. We overrule appellant's seventh issue.

### IX. DEBT

Appellant's eighth issue follows in its entirety:

> In this subject case, the State has taken a contractual agreement, civil in nature in to the realm of criminal prosecution. This is a violation of the Defendant's constitutional right against incarceration for mere debts. As the Constitution of the State of Texas states, "No person shall ever be imprisoned for debt." TEX. CONST. [a]rt. I, § 18.

Appellant has provided no argument or explanation of why his convictions for theft and securities fraud constitute "mere debts." Appellant's issue is inadequately briefed and nothing is preserved for our review. *See* TEX. R. APP. P. 38.1(i); *State v. Gonzalez*, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993) ("When a party raises a point of error without citation of authorities or argument, nothing is presented for appellate review."). We overrule appellant's eighth issue.

### X. SUFFICIENCY OF EVIDENCE OF CRIMINAL INTENT

By his ninth issue, appellant contends that the evidence was insufficient to establish the criminal intent element of both offenses of which he was convicted.

17

Appellant points to: (1) his own testimony that he intended to invest his clients' money and promised to pay them for any losses; and (2) evidence that he partially performed by investing some of the monies and paying some clients on their investments.

In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State,* 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person commits the offense of theft if that person unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. §

18

31.03(a). As alleged in this case, the offense is a second-degree felony if the property unlawfully appropriated is valued at $100,000 or more, but less than $200,000. *See id.* § 31.03(a), (e)(6). A person acts with intent when it is the person's conscious objective or desire to engage in the conduct or cause the result. *See id.* § 6.03(a) (West, Westlaw through 2015 R.S.). Appropriation of property is unlawful if it is "without the owner's effective consent." *See id.* § 31.03(b)(1) (West, Westlaw through 2015 R.S.). Consent is not effective if it is induced by deception or coercion. *See id.* § 31.01(3)(A) (West, Westlaw through 2015 R.S.). Deception means "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true"; or "failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true." *Id.* § 31.01(1)(A)(B). "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." *See id.* § 31.01(2)(A). "Intent may be determined from a defendant's words, acts, and conduct, and 'is a matter of fact, to be determined from all of the circumstances.'" *Hernandez v. State*, 470 S.W.3d 862, 870 (Tex. App.—Fort Worth 2015, pet. ref'd) (quoting *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998)). "Proof of intent to commit theft is determined at the time the alleged criminal act is committed." *Christensen v. State*, 240 S.W.3d 25, 34 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Wilson v. State*, 663 S.W.2d 834, 836–37 (Tex. Crim. App. 1984) ("Relevant intent to deprive the owner of the property is the accused's intent at the time of the taking.")).

Aggregation of multiple thefts committed pursuant to one scheme or continuing course of conduct under section 31.09 of the penal code creates a single offense for purposes of jurisdiction, punishment, and statute of limitations. TEX. PENAL CODE ANN. § 31.09; *Graves v. State*, 795 S.W.2d 185, 187 (Tex. Crim. App. 1990); *Anderson v. State*, 322 S.W.3d 401, 408 (Tex. App.—Houston [14th] Dist. 2010, pet. ref'd). Each individual theft and its elements become an element of the aggregate theft offense. *Weaver*, 982 S.W.2d at 893; *Anderson*, 322 S.W.3d at 408.

Here, a hypothetically correct jury charge would instruct the jury to find appellant guilty if appellant (1) unlawfully appropriated monies (2) from the following owners in the following amounts: $25,000 from Lechuga on March 22, 2011, $50,000 from Hall on September 5, 2011, $25,000 from Trial on August 9, 2012, and $50,000 from Morris on October 16, 2012, (3) without the effective consent of the owners, (4) in that consent was induced by deception by (a) creating false impressions of fact that were likely to affect the judgment of the owners and that appellant did not believe to be true or (b) failing to correct false impressions of fact that were likely to affect the judgment of the owners and that appellant previously created and did not believe to be true; and (5) appellant intended to deprive the owners of their money by withholding it permanently.

A hypothetically correct jury charge would instruct the jury to find appellant guilty of securities fraud if appellant: (1) sold or offered for sale (2) promissory notes and agreements, being securities, (3) to: (a) Lechuga in the amount of $25,000; (b) Hall in the amount of $50,000; (c) Trial in the amount of $25,000; and (d) Morris in the amount of $50,000; (4) and committed fraud in connection with the sale and offers for sale of said securities, (5) by intentionally failing to disclose any one of the following material facts:

(a) that investors' funds would be used for purposes other than those intended; (b) that funds would be used for Mays's personal expenses; (c) that funds had not been used as promised; (d) that Mays Financial Group's assets were pledged to Accion, Texas; (e) that the IRS had filed a federal tax lien against Mays and his ex-wife in the amount of $42,924.56; (f) that there was a judgment against Mays and his ex-wife in Travis County in the amount of $20,289.59; or (g) that Mays's personal financial condition or the financial condition of Mays Financial Group; (6) all amounts were obtained pursuant to one scheme and continuing course of conduct; and (7) the aggregate amount obtained was $100,000 or more. *See* TEX. REV. CIV. STAT. ANN. art. 581–29(C)(1), (4)(c). Article 581–4(F) of the Texas Securities Act defines fraud and fraudulent practice for purposes of the Securities Act as, among other things, "an intentional failure to disclose a material fact." *See id.* art. 581–4(F). That is the theory under which appellant was charged and convicted.

Trial testified that she invested $25,000 in Mays Financial Group. Appellant told Trial and her husband that the money would be invested in commodities such as gold and silver. The Agreement provided for a fixed monthly dividend payment of 1.5%. Appellant did not discuss any risks involved in the investment. Trial testified that she received four monthly payments, a fifth payment late, and no payments after that. Trial stated that she would not have invested in a company whose owner was struggling financially, and appellant did not mention that he or the company was having financial problems. Trial would not have invested money with appellant if she had known that the investment funds would be used for appellant's personal expenses and obligations.

Lechuga testified that appellant approached her in 2011 about investing in small businesses. Lechuga gave appellant a check dated March 22, 2011 for $25,000. The

21

Agreement signed by appellant provided for quarterly dividend payments. Appellant did not disclose any information regarding his own financial difficulties or of those of his company. Lechuga stated that she would not have invested the funds if she had known that the company was suffering financially and that her funds would be used to pay for appellant's personal expenses and obligations. Appellant did not tell her that his company's assets were pledged to Accion, Texas.

The State presented the testimony of Lujan, a financial examiner with the State Securities Board Enforcement Division. Lujan reviewed bank records and prepared summaries showing deposits and expenditures on Mays Financial Group's Frost Bank checking account and appellant's personal and company accounts at TD Ameritrade. State's Exhibit 15 showed the source and use of funds in Mays Financial Group's account for the period March 23, 2011 through April 22, 2011. Lechuga's $25,000 check was deposited into the account and became available on March 23, 2011. Prior to that deposit, the balance in the account was $64.28. Checks on the account show that funds were used to pay personal expenses, including three and a half months' rent, utilities, child support payments, credit card bills, insurance premiums, and loan payments. By April 22, 2011, the account reflected a negative balance.

State's Exhibit 16 showed the source and use of funds in the same account for the period September 6, 2011 through January 13, 2012. The source of funds for this period was Hall's check for $50,000. Lujan testified that these funds were used to pay for rent, utilities and house cleaning, child support, restaurants, credit cards, and loan payments. The amount of $2,500 was paid to appellant's TD Ameritrade account. The summary

shows $1,000 in dividends paid to Hall and $750.00 in dividends paid to Lechuga. The ending balance on the account for the period was $229.87.

State's Exhibit 17 reflected a summary of the records of appellant's TD Ameritrade account for the period November 11, 1011 through July 11, 2012. The account reflected the $2,500 deposit into the account from Hall's $50,000 check. Of Hall's $50,000 investment, only $617.62 was used for trading.

State's Exhibit 18 reflected the Mays Financial Group Frost account for the period August 7, 2012 through October 15, 2012. The beginning balance in the account was $8.00. The primary source of funds for this period was Trial's $25,000 check. Also, $14,400 was transferred into the account from Mays Financial Group's TD Ameritrade account. Of these funds, $20,000 was transferred back to Mays Financial Group's TD Ameritrade account. The Seviers[8] (prior investors) were paid a dividend of $1,500, and Hall and Trial were paid $750 each. The remaining funds were spent on appellant's personal expenses, including rent, child support payments, and payments on loans and credit cards. The ending balance in the account for the period was $234.50.

State's Exhibit 19 reflected the Mays Financial Group Frost account for the period October 16, 2012 through February 5, 2013. The beginning balance was $234.50. The primary source of funds was the $50,000 check from Morris dated October 16, 2012. In addition, $16,780 was transferred into the account from Mays Financial Group's TD Ameritrade account. The following payments were made to investors: $40,000 to Hall, $1,125 to Trial, $1,000 to Morris, and $544.48 to Lechuga. Of the remaining funds, $14,000 was transferred to Mays Financial Group's TD Ameritrade account. The

---

[8] State's Exhibit 18 shows that a $1,500 payment was made to "Jerry and Jodie Sevier." The record is unclear as to whether the payment relates to the investment made by Jerry and Marianne Sevier.

remaining funds were spent on rent, utilities, housecleaning, child support, groceries and liquor, and loan payments.

State's Exhibit 20 reflected deposits, transfers, and dividend payments on the Mays Financial Group's TD Ameritrade account for the period August 1, 2012 through June 21, 2013. The beginning balance on the account in August 2012 was $49.50. The amount of $34,000 was deposited into the account: $20,000 from Trial's check and $14,000 from Morris's check. Of that amount, $31,180 was transferred back to Mays Financial Group's Frost account, leaving approximately $2,820 to be traded. That amount was expended in trading losses and fees associated with the account. Of the $31,180 transferred back to Mays Financial Group's Frost account, $5,669.48 was paid out to investors. The remaining amount was used on appellant's personal expenses.

Hall testified that he invested $50,000 with appellant on September 5, 2011. Hall was to receive a monthly dividend of $250. Appellant told Hall that he would invest the funds in stocks and commodities. The Agreement provided for an initial investment period of one year, after which Hall had the option to continue the investment as a "partner." Approximately one month before the end of the year, Hall informed appellant that he wanted a return of his principal. Hall stated that appellant told him he would use 100 percent of the invested funds for trading. Appellant did not tell Hall that Mays Financial Group's assets were pledged to Accion, did not tell him about the $20,000 Travis County judgment or the IRS tax lien against him, and did not tell him that his investment would be used for appellant's personal expenses. Appellant also did not disclose his personal financial situation or the financial situation of Mays Financial Group. Hall stated that if he had known these facts, he would not have invested in Mays Financial Group.

24

Susan Morris testified that she and her husband Stephen wrote appellant a $50,000 check on June 16, 2012 for investment in Mays Financial Group. Susan testified that they received two monthly dividend payments; thereafter, appellant made excuses and promises. Stephen also testified regarding the investment. Appellant told Stephen that his $50,000 investment would be used to trade in commodities. The Agreement provided for an initial investment period of a year, with an option to continue the investment after that time. The Morrises were to receive $500 monthly dividend payments. After they did not receive payments, Stephen asked for a return of the investment funds, but appellant said he would return the funds plus interest after the expiration of the one-year investment period. Stephen testified that appellant did not disclose any negative financial information about himself or Mays Financial Group. Appellant did not disclose that the company's assets were pledged to Accion, did not tell him about the $20,000 Travis County judgment or the IRS tax lien, and did not tell him that previous investors' funds had not been used as promised. Appellant did not tell Stephen that his funds would be used for his own personal expenses.

Appellant argues that the evidence was insufficient to show his criminal intent because he partially performed by investing some of the investors' funds and making dividend payments to some investors. In support of his argument, appellant cites *Peterson v. State*, 645 S.W.2d 807, 811–12 (Tex. Crim. App. 1983), *Martinez v. State*, 754 S.W.2d 799, 800 (Tex. App.—San Antonio 1988, pet. ref'd), and *Cox v. State*, 658 S.W.2d 668, 670 (Tex. App.—Dallas 1983, pet. ref'd). We find each of these to be distinguishable.

25

In *Peterson*, the court of criminal appeals found insufficient evidence that the defendant had the requisite intent to deprive the owner of monies at issue in a construction contract. 645 S.W.2d at 812. The defendant, a construction contractor, had contracted with the owner to build an addition to his mini-warehouse. *Id.* at 807–08. When the project was between 75% and 95% complete, the contractor failed to complete the job, and the owner hired another contractor to complete the project. *Id.* at 809. Appellant was charged with theft in the amount of the sum of unpaid bills to suppliers at the end of the project. *Id.* at 811. The court of criminal appeals found that when the contractor accepted payments from the owner, there was insufficient evidence to show that the payments were obtained by deception. *Id.* at 812. In the present case, the jurors were instructed to find appellant guilty of theft if appellant deceived investors by creating "false impressions of fact" that were likely to affect the judgment of the investors and that appellant "did not believe to be true." The record showed that only a tiny fraction of the monies appellant took from investors was actually invested. Appellant did not regularly pay dividends to investors as the Agreements provided; he made small payments to investors only when investors made demands about their investments. The only payments made to investors were made with funds obtained from subsequent investors. Appellant told investors that their money would be invested in commodities and there is ample evidence that he did not believe those representations to be true.

In *Martinez*, the San Antonio Court of Appeals found insufficient evidence of intent to commit theft by check. 754 S.W.2d at 801. The appellant, an owner of a used-car business, gave the complainant a post-dated check to purchase a vehicle. *Id.* at 800. However, the appellant had told the complainant that there were insufficient funds in the

26

account to cover the check and had paid the complainant half of the amount owed. *Id.* Under such circumstances, the court found insufficient evidence that the appellant intended to commit theft. *Id.* at 801. For the reasons discussed above, there is ample evidence in the present case that appellant obtained investors' funds by deception.

Similarly, *Cox* involved a dispute over a kitchen remodeling contract. 658 S.W.2d at 671. The Dallas Court of Appeals found that because the appellant had performed many of the services that he had agreed to perform, there was insufficient evidence that his representations to the complainant were false at the time the complainant gave him money. *Id.* at 670–71. Again, we find ample evidence in the present case that appellant committed theft by obtaining investors' funds by deception. *See* TEX. PENAL CODE ANN. §§ 31.03(b)(1), 31.09.

We also find the evidence sufficient to support appellant's conviction for securities fraud. The investors testified that appellant failed to disclose numerous material facts, including that the funds would be used to pay his personal expenses, that the company's assets were pledged to Accion, and that he had a $20,289 judgment and an IRS tax lien against him. A rational jury could have found that appellant committed fraud by failing to disclose these material facts. *See* TEX. REV. CIV. STAT. ANN. art. 581–29(C)(1). We overrule appellant's ninth issue.

## XI. CONCLUSION

We affirm the trial court's judgments.

DORI CONTRERAS GARZA,
Justice

27

Do not publish.
T<small>EX</small>. R. A<small>PP</small>. P. 47.2(b).


Delivered and filed the
28th day of April, 2016.